## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LAURA ALBRIGO, individually, and on behalf of others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | JURY TRIAL DEMANDED |
| YOUNG CONSULTING, LLC. | |
| Defendant. | |

Plaintiff Laura Albrigo ("Plaintiff"), by and through her attorneys, hereby brings this Class Action individually and on behalf of all others similarly situated (collectively, "Class members"), against Defendant Young Consulting, LLC ("Defendant"). Plaintiff complains and alleges the following upon personal knowledge as to herself and upon information and belief as to all other matters.

## <u>INTRODUCTION</u>

1.      This class action arises out of the recent targeted cyberattack and data breach that occurred between April 10, 2024 and April 13, 2024, which affected Defendant's inadequately protected computer systems and/or network, resulting in the unauthorized access to approximately 954,177 individuals personally identifiable information ("PII") and personal health information ("PHI") (hereinafter the "Data Breach").

2.      PII and PHI includes, among other sensitive information, confidential medical information, names, date of birth, addresses, payment card information, Social Security numbers ("SSNs"), medical record numbers, health plan beneficiary numbers, treatment information, diagnosis information, and/or other medical information.

3.      Defendant is the market leader in providing software solutions for the marketing, underwriting and administering and medical stop loss insurance for carriers, brokers and third-party administrators.[1]

4.      As a condition of providing services, Defendant is provided and entrusted with the sensitive and private information of individuals, including PII and PHI.

5.       By taking possession and control of their information, Defendant assumed a duty to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect individuals' PII and PHI from unauthorized disclosure.

6.      Defendant also has a duty to adequately safeguard individuals' sensitive and private information under industry standards and duties imposed by statutes, including the Health Insurance Portability and Accountability Act ("HIPPA"), Section 5 of the Federal Trade Commission Act ("FTC Act"), and other relevant laws and regulations.

7.      Defendant breached its duties by, among other things, failing to implement and maintain reasonable security procedures and practices to protect individuals' PII/PHI from unauthorized access and disclosure.

8.      On or about April 13, 2024, Defendant detected unauthorized activity within its computer systems and/or network and took certain electronic systems offline to contain the event and further investigate the incident to determine whether sensitive data was leaked.[2] Defendant also retained cybersecurity experts to assist in the investigation.[3]

9.      Defendant confirmed that sensitive information was indeed compromised on June 28, 2024.[4]

---

[1] https://www.youngconsulting.com/.
[2] Notice of Data Event, available for download at https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/9cb5e8fe-3d04-48e5-a403-d478cdaf5c7f.html (last accessed Sept. 4, 2024).
[3] *Id.*
[4] *Id.*

10.     While Defendant discovered the breach in April 2024, it did not notify victims of the breach until months later, on August 26, 2024, when it began to mail breach notification letters to victims, including Plaintiff.[5]

11.     Presently, Defendant has offered no assurance to Plaintiff and Class members that the sensitive and private information that was accessed in the Data Breach has been recovered or destroyed.

12.     The information compromised in the Data Breach was disclosed by Defendant to be names, Social Security numbers, dates of birth, insurance policy/claim information, prescriptions and provider names."[6]

13.     The exposure of a person's PII and PHI through a data breach substantially increases that person's risk of identity theft, fraud, misappropriation of health insurance benefits, and similar forms of criminal mischief, potentially for the rest of their lives. Mitigation of such risk requires individuals to expend a significant amount of time and money to closely monitor their credit, financial accounts, health records, and email accounts. Mitigation of the risk of misuse of their sensitive and private information may not even be possible.

14.     As a result of Defendant's inadequate security and breach of its duties and obligations, the Data Breach occurred, and Plaintiff's and Class members' PII and/or PHI was accessed and disclosed. Plaintiff and Class members are now at a substantially increased risk of experiencing misuse of their PII/PHI in the coming years. This action seeks to remedy these failings and their consequences.

15.     Plaintiff, on behalf of herself and all other Class members whose PII/PHI was exposed in the Data Breach, asserts claims for negligence, negligence *per se*, breach of contract, unjust enrichment, invasion of privacy, breach of California consumer protection laws, and seeks declaratory relief, injunctive relief, monetary damages, statutory damages, punitive damages, equitable relief, and all other relief authorized by law.

---

[5] *Id.*
[6] *Id.*

## PARTIES

16.     Plaintiff Laura Albrigo is an adult residing in California.

17.     Defendant Young Consulting, LLC is a limited liability company and medical insurance software provider with a principal place of business located at 1 E. Wacker Drive, Suite 2900, Chicago, Illinois, 60610.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as emended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5 million dollars, exclusive of interest and costs, and is a class action in which some members of the class are citizens of states different than Defendant. *See* 28 U.S.C. § 1332(d)(2)(A). This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

19.     This Court has personal jurisdiction over Defendant because its principal place of business is in this District.

20.     Venue is proper under 18 U.S.C. § 1391(b) because Defendant's principal place of business is in this District.

## FACTUAL ALLEGATIONS

*Defendant Stores Sensitive PII/PHI*

21.     Defendant is the market leader in providing software solutions for the marketing, underwriting and administering and medical stop loss insurance for carriers, brokers and third-party administrators.[7]

22.     As a condition of providing services, Defendant is provided and entrusted with sensitive and private information, including PII and PHI. Defendant collects and maintains the aforementioned information.

23.     Upon information and belief, the type of information that Defendant maintains includes, *inter alia*: full name, address, date of birth, Social Security number ("SSN"), credit/debit

---

[7] *Supra* n.1.

card information, medical history, insurance information, billing information, medical records, photo identification, and any other information necessary to carry out its business.

24.    Due to the highly sensitive nature of the information Defendant collects and maintains, Defendant is obligated provide confidentiality and adequate security for PII/PHI through its applicable privacy policy, and otherwise maintain compliance with statutory privacy requirements.

25.    Plaintiff and Class members provided Defendant or Defendant's clients with at least their PII and/or PHI.

26.    Plaintiff and Class members, relied on Defendant to keep their sensitive PII/PHI confidential and secured, to use such information for business purposes only, and to make only authorized disclosures of this information.

***The Data Breach***

27.    On or about April 13, 2024, Defendant detected unauthorized activity within its systems. In response, it took certain electronic systems offline and initiated an investigation with cybersecurity experts.[8]

28.    Sometime between April 13, 2024, and June 28, 2024, Defendant confirmed that information relating to certain data owners, including Blue Shield, may have been impacted and Defendant provided those data owners with copies of the potentially impacted files.[9]

29.    On June 28, 2024, Defendant confirmed with Blue Shield that the files were indeed compromised in the Data Breach and potentially downloaded by cybercriminals.[10]    The information compromised in the Data Breach includes Social Security numbers, dates of birth, insurance policy/claim information, prescriptions and provider names.[11]

---

[8] *Supra* n.2.
[9] *See* https://youngconsulting.com/notice/youngconsulting-notice.html (last visited Sept. 4, 2024).
[10] *Id.*
[11] *Id.*

30.    However, Defendant did not begin to notify the victims of the breach until August 26, 2024, more than four months after the attack occurred.[12]

31.    Defendant's failure to promptly notify Plaintiff and Class members that their PII and PHI was compromised placed them at a higher risk that their information will be used towards illegal means since their information was vulnerable for roughly four months without their knowledge. Due to the delay, Plaintiff and Class members were unable to take affirmative steps to mitigate their risks of fraud and/or identity theft from the unauthorized disclosure of their PII and PHI.

32.    Additionally, the breach notification letter is deficient, which quite simply informs victims that their PII and or PHI has been compromised.

> On April 13, 2024, Young Consulting became aware of technical difficulties in their computer environment. Young Consulting immediately took certain systems offline to contain the incident and launched an investigation, with the assistance of a cybersecurity forensics firm, to determine the nature and scope of the event. The investigation determined that an unauthorized actor gained access to Young Consulting's network between April 10, 2024, and April 13, 2024, and downloaded copies of certain files.
>
> During the review process, Young Consulting worked to determine what information was contained within the involved files, and to identify the individuals whose information may have been involved. That process is ongoing, however, during this process, Young Consulting identified that information relating to certain data owners, including Blue Shield and the above referenced covered entities, may have been impacted and provided those data owners with copies of the potentially impacted files. On June 28, 2024, Young Consulting provided confirmation to Blue Shield that those files were accessed by an unauthorized actor. Young Consulting then worked to identify appropriate contact information for the impacted individuals to begin providing notification.
>
> The information involved varies by individual but may include name, Social Security number, date of birth, insurance policy/claim information, prescriptions, and provider name.[13]

33.    Notably, the breach notification letter fails to adequately describe with specificity neither the nature of the attack nor the measures taken by Defendant to prevent future attacks.

---

[12] *Supra* n.2.
[13] *Id.*

Without these details, Plaintiff and Class members are at a disadvantage to take steps to mitigate the harms resulting from the Data Breach.

34.    In fact, Defendant vaguely states that it "is reviewing its policies, procedures, and processes related to the storage and access of sensitive information to prevent a similar incident from occurring in the future."[14]

35.    The mitigation efforts offered by Defendant in the breach notification letter are also wholly deficient.

36.    Defendant has offered 1 year of credit monitoring services, which is inadequate to redress the damage to Plaintiff and Class members' privacy and the imminent threat they now face and will likely continue to face for the remainder of their lives.

37.    Defendant wishes to place the burden of identity protection on Plaintiff and Class members when the blame for the access and disclosure of their PII and PHI is through no fault of their own. Rather, it is Defendant's fault.

38.    Based on the unfortunate events described throughout this Complaint, Defendant failed to take action to prevent the Data Breach by implementing data security measures to protect its network from unauthorized breach and thereby failed to protect Plaintiff's and Class members' PII and PHI.

39.    Upon information and belief, the cyberattack was targeted at Defendant, due to its status as a medical insurance software provider that collects, creates, and maintains PII/PHI on its computer network and/or systems.

40.    Plaintiff's and Class members' PII and PHI was compromised and acquired in the Data Breach.

41.    Plaintiff further believes that her PII and PHI will continue to be available for purchase on the dark web, which is the *modus operandi* of cybercriminals.

---

[14] *Id.*

42.    Plaintiff and Class members now face a heightened and continued threat of identity theft and other types of criminal mischief resulting from the Data Breach.

***Defendant Knew that PII/PHI is Valuable to Cybercriminals and Failed to Take Action to Prevent its Theft***

43.    At all relevant times, Defendant knew, or should have known, that Plaintiff's and Class members' PII/PHI was a target for cybercriminals. Despite such knowledge, Defendant failed to implement and maintain reasonable and appropriate data privacy and security measures to protect Plaintiff's and Class members' PII/PHI from cyberattacks.

44.    By acquiring, collecting, and using Plaintiff's and Class members PII/PHI, Defendant assumed legal and equitable duties created by the HIPPA, the FTCA, industry standards, contract, and statutory and common law to keep Plaintiff's and Class members' PII/PHI confidential, and to protect it from unauthorized access and disclosure.

45.    Additionally, Defendant's data security obligations were of particular importance due to the steady increase over the years of data breaches targeting medical information.

46.    The healthcare industry is a known target for cyber criminals. "High demand for patient information and often-outdated systems are among the nine reasons healthcare is not the biggest target for online attacks."[15] Healthcare entities are also more likely to pay a hacker's ransom due to the sensitive nature of the information maintained and collected, and have an incentive to regain access to the data quickly.[16]

47.    The number of data breaches experienced by healthcare entities continues to rise. In a 2024 report, the healthcare compliance company Protenus found that there were 942 medical

---

[15] Swivel Secure, *The healthcare industry is at risk*, https://swivelsecure.com/solutions/healthcare/healthcare-is-the-biggest-target-for-cyberattacks/ (last visited Sept. 4, 2024).

[16] Elise Takahama, *Why health care has become a top target for cybercriminals*, The Seattle Times (Feb. 25, 2024), https://www.seattletimes.com/seattle-news/health/why-health-care-has-become-a-top-target-for-cybercriminals/. (last visited Sept. 4, 2024).

data breaches in 2023, leaving over 171 million patient records exposed. This is an increase from the 905 medical data breaches that Protenus compiled in 2021.[17]

48.    According to Mimecast, a cybersecurity firm, 90% of healthcare organizations experienced cyberattacks in 2020.[18]

49.    In fact, the last several years are marked by several high-profile healthcare data breaches including:

- Eastern Radiologists, Inc. (886,746 patients, February 2024);

- MCNA Dental (8,900,000 patients, March 2023);

- Broward Health (1,300,000 patients, January 2022);

- Morley (521,046 patients, February 2022);

- Regal Medical Group (3,300,000 patients, December 2022);

- Trinity Health (3,300,000 patients, March 2020);

- Shields Healthcare Group (2,000,000 patients, March 2022); and

- One Touch Point (2,600,000 individuals, July 2022).

50.    An article from April 23, 2024 discussed the latest findings in Baker Hostetler's tenth annual Data Security Incident Response Report, which found that despite companies' adeptness to respond to cyberattacks from criminals, "ransomware attacks show no signs of abating…"[19] Moreover, "[c]ombating these attacks has also been complicated by hackers' practice of constantly innovating and evolving their methods in order to get around the controls and safeguards that businesses are erecting to counter their attacks…"[20]

---

[17] *2024 Breach Barometer*, PROTENUS, available for download at: https://www.protenus.com/breach-barometer-report (last visited July 17, 2024).

[18] Maria Hernandez, *Iowa City Hospital Suffers Phishing Attack*, Security Magazine (Nov. 23, 2020), https://www.securitymagazine.com/articles/93988- iowa-city-hospital-suffers-phishing-attack (last visited Sept. 4, 2024).

[19] Allison Grande, *Ransomware Still on the Rise Despite Better Defenses, Firm Says*, LAW 360 (Apr. 23, 2024), https://www.law360.com/articles/1827647/ransomware-still-on-rise-despite-better-defenses-firm-says (last visited Sept. 4, 2024).

[20] *Id.*

51.     Defendant certainly knew and understood that unprotected or exposed PII/PHI in the custody of healthcare entities, like Defendant, is valuable and highly sought after by criminals seeking to illegally monetize that PII/PHI through unauthorized access.

52.     Indeed, personal data such as PII/PHI is a valuable property right, leading to the purchase of said data by American companies. American companies have spent over $19 billion on acquiring personal data of consumers in 2018.[21]

53.     Consumers also place a high value on the privacy of their data. Studies confirmed that where private information is "made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[22]  Recently, more consumers are exercising their Data Subject Access Rights and leaving providers over their data practices and policies.[23]

54.     Considering the value behind PII/PHI, any company that transacts business with a consumer and then compromises the privacy of consumers' PII/PHI has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

55.     PII/PHI is also of high value to identity thieves, as evidenced by their practice of trading such private information including, SSNs, on the black market or "dark web." PII/PHI is a measurable commodity on the black market.[24] PHI is particularly valuable and has been referred

---

[21] *U.S. Firms to Spend Nearly $19.2 Billion on Third-Party Audience Data and Data-Use Solutions in 2018, Up 17.5% from 2017*, INTERACTIVE ADVERTISING BUREAU (Dec. 5, 2018), https://www.iab.com/news/2018-state-of-data-report/ (last visited Sept. 4, 2024).

[22] Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior*, *An Experimental Study*, 22(2) INFORMATION SYSTEMS RESEARCH 254 (June 2011), available for download at: https://www.jstor.org/stable/23015560?seq=1.

[23] CISCO, *Cisco 2023 Consumer Privacy Survey* (April 2023), available at https://www.cisco.com/c/en/us/about/trust-center/consumer-privacy-survey.html?CCID=cc000742.

[24] *See* Robert Lowes, *Stolen EHR [Electronic Health Record] Charts Sell for $50 Each on Black Market*, MEDSCAPE (Apr. 28, 2014), http://www.medscape.com/viewarticle/824192 (last visited Sept. 4, 2024).

to as a "treasure trove for criminals."[25] In 2021, it was reported that stolen healthcare records can also fetch for as much as $1000 on the black market.[26] That price is likely much higher today.

56.    According to a report released by the Federal Bureau of Investigation's ("FBI") Cyber Division, criminals can sell healthcare records for 50 times the price of a stolen Social Security or credit card number.[27]

57.    Another report demonstrates that cybercriminals continue to profit from ransomware attacks: "[t]he largest ransom paid in 2023 was more than $10 million, an increase from the $8 million payment high from 2022, and the average ransom paid in 2023 was $747,651, which nearly matches the average payment high that was set in 2020 during the height of the ransomware epidemic, the report noted."[28]

58.    Companies like Defendant are aware that consumers value the privacy of their sensitive data such as PII/PHI and that cybercriminals continue to successfully target that data to obtain significant profits. As such, companies like Defendant remain on high alert and must act in accordance with their legal and equitable obligations to implement reasonable security measures to prevent targeted data attacks aimed at individuals' PII/PHI.

59.    Armed with this knowledge, Defendant breached its duties by failing to implement and maintain reasonable security measures to protect Plaintiff's and Class members' PII/PHI from being stolen.

***Theft of PII/PHI Has Grave and Lasting Consequences for Victims***

[25] *See* Andrew Steger, *What Happens to Stolen Healthcare Data?*, HEALTHTECH MAGAZINE (Oct. 30, 2019), https://healthtechmagazine.net/article/2019/10/what-happens-stolen-healthcare-data-perfcon (quoting Tom Kellermann, Chief Cybersecurity Officer, Carbon Black, stating "Health information is a treasure trove for criminals.") (last visited Sept. 4, 2024).

[26] Paul Nadrag, *Industry Voices-Forget credit card numbers. Medical records are the hottest items on the dark web*, FIERCE HEALTHCARE (Jan. 26, 2021), https://www.fiercehealthcare.com/hospitals/industry-voices-forget-credit-card-numbers-medical-records-are-hottest-items-dark-web ) (last visited July 17, 2024).

[27] *See Health Care Systems and Medical Devices at Risk for Increased Cyber Intrusions for Financial Gain*, FBI CYBER DIVISION (Apr. 8, 2014), https://www.illuminweb.com/wp-content/uploads/ill-mo-uploads/103/2418/health-systems-cyber-intrusions.pdf.

[28] *Supra* n.19.

60.    The theft of PII/PHI is costly for those affected. A cybercriminal who steals a person's PHI can end up with as many as "seven to 10 personal identifying characteristics of an individual."[29] A study by Experian found that the "average total cost" of medical identity theft is "about $20,000" per incident, and that a majority of victims of medical identity theft were forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[30]

61.    Identity thieves use personal information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud. According to Experian, one of the largest credit reporting companies in the world, identity theft can happen in many ways: fraudsters can obtain and sell personal data to other criminals, or use personal data to open a new credit card or loan, open a bank account and write bad checks, apply for government benefits, take over existing debit and credit accounts, withdraw funds, and even get medical procedures.[31]

62.    The Federal Trade Commission ("FTC") also warns consumers about the type of fraud that identity thieves use PII/PHI to achieve.[32] Criminals can also obtain a driver's license or official identification card in the victim's name, but with the thief's picture, use the victim's name and SSN to obtain government benefits, or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's SSN, rent a house, or receive medical services in the victim's name, and may even give the victim's personal

---

[29] *Supra* n.25.

[30] Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (Mar. 3, 2010), https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims (last visited Sept. 4, 2024).

[31] Louis DeNicola, *What Can Identity Thieves Do with Your Personal Information and How Can You Protect Yourself?*, EXPERIAN (May 21, 2023), https://www.experian.com/blogs/ask-experian/what-can-identity-thieves-do-with-your-personal-information-and-how-can-you-protect-yourself/ (last visited Sept. 4, 2024).

[32] *See What to Know About Identity Theft*, FEDERAL TRADE COMMISSION CONSUMER ADVICE, https://www.consumer.ftc.gov/articles/what-know-about-identity-theft (last visited Sept. 4, 2024).

information to police during an arrest, resulting in an arrest warrant being issued in the victim's name.[33]

63.    Alarmingly, a thief can use stolen medical information to extort a financial payment by "leveraging details specific to a disease or terminal illness."[34]

64.    Identity theft is not an easy problem to solve. In a survey, the Identity Theft Resource Center found that most victims of identity crimes need more than a week to resolve issues stemming from identity theft and some need months to a year.[35]

65.    Theft of SSNs also creates a particularly alarming situation for victims because those numbers cannot easily be replaced. To obtain a new number, a breach victim has to demonstrate ongoing harm from misuse of his/her SSN, and a new SSN will not be provided until after the harm has already been suffered.

66.    Victims of medical identity theft face another set of problems. A report published by the World Privacy Forum and presented at the US FTC Workshop on Informational Injury describes what medical identity theft victims may experience:

- Changes to their health care records, most often the addition of falsified information, through improper billing activity or activity by imposters. These changes can affect the healthcare a person receives if the errors are not caught and corrected;

- Significant bills for medical goods and services not sought nor received;

- Issues with insurance, co-pays, and insurance caps;

- Long-term credit problems based on problems with debt collectors reporting debt due to identity theft;

- Serious life consequences resulting from the crime; for example, victims have been falsely accused of being drug users based on falsified entries to their medical files; victims have had their children removed from them due to medical activities

---

[33] *See Warning Signs of Identity Theft*, FEDERAL TRADE COMMISSION, https://www.identitytheft.gov/Warning-Signs-of-Identity-Theft (last visited July 17, 2024).
[34] *Supra* n.25.
[35] Identity Theft Resource Center, 2023 Consumer Impact Report, available for download at: https://www.idtheftcenter.org/publications/.

of the imposter; victims have been denied jobs due to incorrect information placed in their health files due to crime;

- As a result of improper and/or fraudulent medical debt reporting, victims may not qualify for mortgage or other loans and may experience other financial impacts;

- Phantom medical debt collection based on medical billing or other identity information; and

- Sales of medical debt arising from identity theft can perpetuate a victim's debt collection and credit problems, through no fault of their own.[36]

67. Further complicating victims' ability to defend themselves from identity theft is the time lag between when PII/PHI is stolen, when it is used, and when a person discovers that it has been used. On average it takes approximately three months for consumers to discover their identity has been stolen and used, and it takes some individuals up to three years to learn that information.[37]

68. Plaintiff and Class members now live with their PII/PHI exposed in cyberspace and available to people willing to purchase and use the information for any number of improper purposes and crimes.

69. Plaintiff and Class members now face constant surveillance of their financial and personal records, monitoring, and loss of rights. Plaintiff and Class members are incurring and will continue to incur such damages, in addition to any fraudulent use of their PII/PHI.

---

[36] World Privacy Forum, *The Geography of Medical Identity Theft* (Dec. 12, 2017), available for download at: https://www.worldprivacyforum.org/2017/12/new-report-the-geography-of-medical-identity-theft/.

[37] John W. Coffey, *Difficulties in Determining Data Breach Impacts*, 17 JOURNAL OF SYSTEMICS, CYBERNETICS AND INFORMATICS 9 (2019), available at: http://www.iiisci.org/journal/pdv/sci/pdfs/IP069LL19.pdf

*Defendant Failed to Comply with Statutory Regulations*

70.     The Health Insurance Portability and Accountability Act ("HIPPA") requires covered entities to implement reasonable security measures to protect patient information, including protected health information, defined as "individually identifiable health information" which either "identifies the individual" or where there is a "reasonable basis to believe the information can be used to identify the individual," that is held or transmitted by a healthcare provider. *See* 45 C.F.R. § 160.103.

71.     HIPPA further prohibits the unauthorized disclosure of protected health information.

72.     Defendant is a HIPPA covered entity that provides healthcare services. *See* 45 C.F.R. § 160.12.  As a regular and necessary part of its business, Defendant collects and maintains PII/PHI of individuals.

73.     HIPPA requires Defendant to implement adequate safeguards to prevent unauthorized use or disclosure of private information such as PII/PHI by adopting the requirements set forth in the HIPPA's Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information), and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and C ("Security Standards for the Protection of Electronic Protected Health Information").

74.     Defendant is also required to report any unauthorized use or disclosure of that information, including incidents of a data breach "without unreasonable delay and in no case later than 60 days following discovery of the breach."[38] *See* 45 C.F.R. § 164.302.

75.     As a HIPPA covered entity, Defendant assumed legal obligations and knew or should have known that it was responsible for safeguarding Plaintiff's and Class members' sensitive and private information from unauthorized disclosure.

---

[38] Breach Notification Rule, U.S. Dep't of Health & Human Services, available at: https://www.hhs.gov/hipaa/for-professionals/breach-notification/index.html.

76.    As set forth throughout this Complaint, Defendant did not implement the required safeguards it is required to maintain under HIPPA. Defendant did so with knowledge of its legal duties under HIPPA and of the risks associated with unauthorized access to Plaintiff's and Class members' PHI.

77.    Defendant's HIPPA violations include but are not limited to the following:

a.  Failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits. 45 C.F.R. § 164.306(a)(1);

b.  Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of PHI. 45 C.F.R. § 164.306(a)(2);

c.  Failing to protect against any reasonably anticipated uses or disclosure of electronic PHI that is not permitted. 45 C.F.R. § 164.306(a)(3);

d.  Failing to ensure compliance with HIPPA security standards by Defendant's workforce. 45 C.F.R. § 164.306(a)(4);

e.  Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights. 45 C.F.R. § 164.312(a)(1);

f.  Failing to implement policies and procedures to prevent, detect, contain and correct security violations. 45 C.F.R. § 164.308(a)(1);

g.  Failing to identify and respond to suspected or known security incidents and failing to mitigate the harmful effects of security incidents that are known. 45 C.F.R. § 164.308(a)(6)(ii);

h.  Failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry our their functions and to maintain security of PHI. 45 C.F.R. § 164.530(b); 45 C.F.R. § 164.308(a)(5); and

i.  Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI. 45 C.F.R. § 164.530(c).

78.     As a result of its failure to comply with HIPPA regulations, cybercriminals circumvented Defendant's lax security measures, resulting in the Data Breach and injuring Plaintiff and Class members.

79.     The Federal Trade Commission Act ("FTCA") prohibits Defendant from engaging in "unfair or deceptive acts or practices in or affecting commerce." *See* 15 U.S.C. § 45.

80.     The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which reflect the importance of implementing reasonable data security practices.

81.     The FTC's publication, Protecting Personal Information, established cyber-security guidelines for businesses. The guidelines provide that businesses should take action to protect the personal patient information that they collect; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their networks' vulnerabilities; and implement policies to correct any security problems.[39]

82.     The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[40]

83.     The FTC further recommends that businesses not maintain private information longer than is needed for authorization of a transaction; limit access to sensitive information; require complex passwords be used on networks; use industry-tested methods for security monitor for suspicious activity on the networks; and verify that third-party service providers have implemented reasonable security measures.

84.     The FTC has the authority to bring enforcement actions against businesses for failing to protect PII/PHI adequately and reasonably under Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45.

---

[39] Protecting Personal Information: A Guide for Business, Federal Trade Commission (2016). Available at https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business.

[40] *Id.*

85.     The orders that result from enforcement actions further clarify the measures businesses must take to meet their data security obligations.

86.     Defendant failed to properly implement basic data security practices.

87.     Defendant was at all relevant times fully aware of its obligations to protect individuals' PII/PHI, and of the significant consequences that would result from its failure to do so.

88.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to individuals' PII/PHI constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

89.     Consequently, cybercriminals circumvented Defendant's lax security measures, resulting in the Data Breach.

***Defendant Failed to Comply with Industry Standards***

90.     Industry standards for healthcare providers such as Defendant exist because of the high threat of cyberattacks that target the sensitive information that they collect and maintain.

91.     These practices include, but are not limited to: educating and training employees about the risks of cyberattacks, strong passwords, multi-layer security such as firewalls, anti-virus and malware software, encryption, multi-factor authentication, backup data, limitation of employees with access to sensitive data, setting up network firewalls, switches and routers, monitoring and limiting the network ports, and monitoring and limited access to physical security systems.

92.     Defendant failed to meet the minimum standards of any of the following: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

93.     Defendant's failure to implement the industry standards described herein resulted in the Data Breach and caused injury to Plaintiff and Class members.

***Common Damages Sustained by Plaintiff and Class Members***

94.     For the reasons mentioned above, Plaintiff and all other Class members have suffered injury and damages directly attributable to Defendant's failure to implement and maintain adequate security measures, including, but not limited to: (i) a substantially increased risk of identity theft and medical theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their PII/PHI; (iii) breach of the confidentiality of their PII/PHI; (iv) invasion of their privacy; (v) deprivation of the value of their PII/PHI, for which there is a well-established national and international market; and/or (vi) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of identity theft and medical identity theft they face and will continue to face.

***Plaintiff's Experience***

95.     Plaintiff Laura Albrigo is an adult residing in California.

96.     Plaintiff provided private information to Defendant's clients including her name, date of birth, insurance claim information, and Social Security number.

97.     Upon information and belief, Defendant retained Plaintiff's private information in its system at the time of the Data Breach.

98.     On or about September 2, 2024, Plaintiff received a notice letter from Defendant which identified her as a victim in the Data Breach.

99.     The letter disclosed that the information stolen included her name, date of birth, insurance claim information, and Social Security number.

100.    Plaintiff is careful about sharing her private information. Plaintiff stores any documents containing private information in a safe and secure location. Plaintiff would not have entrusted her private information with Defendant had she known of Defendant's failure to implement and maintain data security measures.

101.    Plaintiff's PII and/or PHI was improperly accessed and obtained by unauthorized third parties in the Data Breach.

102.    Since the announcement of the Data Breach, Plaintiff has been required to spend valuable time monitoring her various accounts in an effort to detect and prevent any misuses of her PII/PHI, time she would not have had to spend but for the Data Breach.

103.    As a result of the Data Breach, Plaintiff suffered actual injury including, but not limited to: (i) a substantially increased risk of identity theft and medical theft; (ii) improper disclosure of their PII/PHI; (iii) breach of the confidentiality of their PII/PHI; (iv) invasion of privacy; (v) deprivation of the value of her PII/PHI, for which there is a well-established national and international market; and/or (vi) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of identity theft and medical identity theft she faces and will continue to face.

104.    The Data Breach caused Plaintiff to suffer fear, anxiety, and stress, which is amplified by the fact that key details about the Data Breach are still unknown, and Plaintiff's PII/PHI is still at risk of being stolen and used for fraudulent activity.

## CLASS ALLEGATIONS

105.    Plaintiff brings this class action individually and on behalf of all persons similarly situated, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).

106.    Plaintiff seeks certification of a Class as defined below and subject to further amendment:

**Nationwide Class**

All individuals in the United States whose PII and/or PHI was compromised in the Data Breach that occurred between April 10, 2024, and April 13, 2024 (the "Class").

**State Subclass**

All individuals in California whose PII and/or PHI was compromised in the Data Breach that occurred between April 10, 2024, and April 13, 2024 (the "California Subclass").

107.    Excluded from the Class is Defendant and its affiliates, parents, subsidiaries, officers, agents, and directors, as well as the judge(s) presiding over this matter and the clerks of said judge(s).

108.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

109.    <u>Numerosity</u>. The members in the Class are so numerous that joinder of all Class members in a single proceeding would be impracticable. It has been reported to the Maine Attorney General that approximately 954,177 people were affected by the Data Breach. The contact information of those individuals is available from Defendant's business records.

110.    <u>Commonality</u>. Common questions of law and fact exist as to all Class members and predominate over any potential questions affecting only individual Class members. Such common questions of law or fact include, *inter alia*:

      a.    Whether Defendant had a duty to implement and maintain reasonable security procedures and practices to protect and secure Plaintiff's and Class members' PII/PHI from unauthorized access and disclosure;

      b.    Whether Defendant failed to exercise reasonable care to secure and safeguard Plaintiff's and Class members' PII/PHI;

      c.    Whether Defendant breached its duties to protect Plaintiff's and Class members' PII/PHI;

      d.    When Defendant learned of the Data Breach;

e.  Whether Defendant knew or should have known that its data security systems and monitoring procedures were deficient;

f.  Whether hackers obtained Plaintiff's and Class members' data in the Data Breach;

g.  Whether a contract existed between Defendant and its clients providing that Defendant would implement and maintain reasonable security measures to protect and secure Class members' PII/PHI from unauthorized access and disclosure;

h.  Whether Plaintiff and Class members were third-party beneficiaries of contracts between Defendant and its clients;

i.  Whether Defendant was unjustly enriched;

j.  Whether Defendant violated the California Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq.;

k.  Whether Defendant violated the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.100, et seq.;

l.  Whether Plaintiff and Class members are entitled to injunctive relief and identity theft protection to redress the imminent harm they face due to the Data Breach; and

m.  Whether Plaintiff and all other members of the Class are entitled to damages and the measure of such damages and relief.

111.  <u>Typicality</u>. Plaintiff's claims are typical of the claims of the Class. Plaintiff, like all proposed members of the Class, had her PII/PHI compromised in the Data Breach. Plaintiff and Class members were injured by the same wrongful acts, practices, and omissions committed by Defendant, as described herein. Plaintiff's claims therefore arise from the same practices or course of conduct that give rise to the claims of all Class members.

112.  <u>Adequacy of Representation</u>. Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff is an adequate representative of the Class in that she has

no interests adverse to, or conflict with, the Class she seeks to represent. Plaintiff has retained counsel with substantial experience and success in the prosecution of complex consumer protection class actions of this nature.

113. <u>Superiority</u>. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other financial detriment suffered by Plaintiff and all other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress from Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

114. All members of the proposed Class are readily ascertainable. Defendant has access to the names, addresses, and/or email addresses of Class members affected by the Data Breach.

115. Finally, class certification is appropriate under Fed. R. Civ. P. 23(b). Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff on behalf of herself and all other Class members. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
**(Plaintiff, on behalf of herself and the Nationwide Class, or in the alternative, the California Subclass)**

116.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

117.    Defendant collected, acquired, and stored Plaintiff's and Class members' private information.

118.    Defendant had knowledge of the sensitivity of Plaintiff's and Class members' private information, and the consequences that would result from the unauthorized disclosure of such information. Defendant knew that entities such as itself were the target of cyberattacks in the past, and that Plaintiff and Class members were the foreseeable and probable victims of any inadequate data security procedures.

119.    It was therefore reasonably foreseeable that the failure to implement adequate data security procedures would result in injuries to Plaintiff and Class members.

120.    Defendant owed a duty to Plaintiff and Class members to exercise reasonable care in safeguarding and protecting their private information in its possession, custody, or control from the unauthorized disclosure of such information.

121.    Defendant's duty to exercise reasonable care arises from several sources, including but not limited to common law, HIPPA, the FTCA, industry standards, and other statutory law.

122.    Defendant's duty also arose from its position as a medical insurance software provider. As a medical insurance software provider, Defendant assumed a duty to exercise reasonable care in safeguarding and protecting individuals' private information in its possession, custody, or control from the unauthorized disclosure of such information.

123.    Defendant breached its duty by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII/PHI by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls,

policies, procedures, protocols, and software and hardware systems to safeguard and protect PII/PHI entrusted to it—including Plaintiff's and Class members' PII/PHI.

124.    Defendant admitted that the PII/PHI of Plaintiff and Class members was accessed by unauthorized third persons and downloaded as a result of the Data Breach.

125.    Defendant's negligent conduct or breach of the above-described duties owed to Plaintiff and Class members caused their PII/PHI to be compromised in the Data Breach.

126.    Plaintiff and Class members were in no position to protect their PII/PHI themselves.

127.    But for Defendant's breach of the duties described herein, Plaintiff and Class members' PII and PHI would not have been compromised.

128.    There is a causal relationship between Defendant's failure to implement, control, direct, oversee, manage, monitor, and audit adequate data security procedures to protect the PII and PHI of individuals and the harm suffered by Plaintiff and Class members.

129.    Defendant's conduct described above directly and proximately caused the Data Breach, and Plaintiff and all other Class members have suffered, and will continue to suffer, economic damages and other injury and actual harm in the form of, *inter alia*: (i) a substantially increased risk of identity theft and medical theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) actual identity theft; (iii) improper disclosure of their PII/PHI; (iv) breach of the confidentiality of their PII/PHI; (v) deprivation of the value of their PII/PHI, for which there is a well-established national and international market; and/or (vi) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of medical identity theft they face and will continue to face.

130.    As a direct and proximate result of Defendant's wrongful conduct, Plaintiff and Class members have suffered and will continue to suffer other forms of injury, including

but not limited to, anxiety, emotional distress, invasion of privacy, and other economic and non-economic losses.

131.    Plaintiff and Class members are entitled to damages incurred as a result of the Data Breach.

132.    Defendant's negligent conduct is ongoing, in that it still holds Plaintiff's and Class members PII and/or PHI in an unsafe and insecure manner.

133.    Plaintiff and Class members are also entitled to injunctive relief in the form of requiring Defendant to strengthen its data security procedures and to provide credit monitoring to Class Members.

**COUNT II**
**NEGLIGENCE *PER SE***
**(Plaintiff, on behalf of herself and the Nationwide Class, or in the alternative, the California Subclass)**

134.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

135.    Defendant's duties arise from, *inter alia*, the HIPAA Privacy Rule ("Standards for Privacy of Individually Identifiable Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and E, and the HIPAA Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C (collectively, "HIPAA Privacy and Security Rules").

136.    Defendant's duties also arise from Section 5 of the FTC Act ("FTCA"), 15 U.S.C. § 45(a)(1), which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, the unfair act or practice by a business, such as Defendant of failing to employ reasonable measures to protect and secure PII/PHI.

137.    Defendant violated HIPAA Privacy and Security Rules, Section 5 of the FTCA, UCL, CMIA, and CCPA by failing to use reasonable measures to protect Plaintiff's and Class members' PII/PHI and not complying with applicable industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of PII/PHI it obtains and

stores, and the foreseeable consequences of a data breach involving PII/PHI including, specifically, the substantial damages that would result to Plaintiff and the other Class members.

138.    Defendant's violations of HIPAA Privacy and Security Rules and Section 5 of the FTCA constitutes negligence *per se*.

139.    Plaintiff and Class members are within the class of persons that the HIPAA Privacy and Security Rules and Section 5 of the FTCA were intended to protect.

140.    The harm occurring as a result of the Data Breach is the type of harm HIPAA Privacy and Security Rules and Section 5 of the FTCA were intended to guard against.

141.    It was reasonably foreseeable to Defendant that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII/PHI by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems, would result in the release, disclosure, and dissemination of Plaintiff's and Class members' PII/PHI to unauthorized individuals.

142.    The injury and harm that Plaintiff and the other Class members suffered was the direct and proximate result of Defendant's violations of HIPAA Privacy and Security Rules, and Section 5 of the FTCA. Plaintiff and Class members have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, *inter alia*: (i) a substantially increased risk of identity theft and medical theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) actual identity theft; (iii) improper disclosure of their PII/PHI; (iv) breach of the confidentiality of their PII/PHI; (v) deprivation of the value of their PII/PHI, for which there is a well-established national and international market; and/or (vi) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of medical identity theft they face and will continue to face.

143.    As a direct and proximate result of Defendant's wrongful conduct, Plaintiff and Class members have suffered and will continue to suffer other forms of injury, including but not limited to, anxiety, emotional distress, invasion of privacy, and other economic and non-economic losses.

144.    Plaintiff and Class members are entitled to damages incurred as a result of the Data Breach.

145.    Plaintiff and Class members are also entitled to injunctive relief in the form of requiring Defendant to strengthen its data security procedures and to provide credit monitoring to Class members.

<u>**COUNT III**</u>
**BREACH OF CONTRACT**
**(Plaintiff, on behalf of herself and the Nationwide Class, or in the alternative, the California Subclass)**

146.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

147.    Defendant and its clients, including Blue Shield, entered into contracts to perform services that include medical insurance software solutions.

148.    Plaintiff and Class members were the intended third-party beneficiaries of the contracts between Defendant and its clients, and Defendant knew that Plaintiff and Class members would be harmed should Defendant breach its obligations under the contracts.

149.    The contracts between Defendant and its clients were intended for the protection of Plaintiff's and Class members' sensitive information by Defendant.

150.    Additionally, Defendant knew that full performance of the contracts would benefit Plaintiff and Class members through its medical insurance software platforms.

151.    Defendant breached its contracts by failing to implement reasonable safeguards to protect Plaintiff's and Class members' PII/PHI from unauthorized disclosure.

152.    As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiff and Class members have suffered and will suffer injury, including, but not limited to: (i) a substantially increased risk of identity theft and medical theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) actual identity theft; (iii) improper disclosure of their PII/PHI; (iv) breach of the confidentiality of their PII/PHI; (v) deprivation of the value of their PII/PHI, for which there is a well-established national and international market; and/or (vi) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of medical identity theft they face and will continue to face.

153.    As a direct and proximate result of Defendant's wrongful conduct, Plaintiff and Class members have suffered and will continue to suffer other forms of injury, including but not limited to, anxiety, emotional distress, invasion of privacy, and other economic and non-economic losses.

154.    Plaintiff and Class members are entitled to damages incurred as a result of the Data Breach.

<u>**COUNT IV**</u>
**BREACH OF IMPLIED CONTRACT**
**(Plaintiff, on behalf of herself and the Nationwide Class, or in the alternative, the California Subclass)**

155.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

156.    In connection with obtaining services from Defendant, Plaintiff and all other Class members entered into implied contracts with Defendant or were intended third-party beneficiaries of contracts between Defendant and others.

157.    Pursuant to these implied contracts, money was paid to Defendant, whether directly from Plaintiffs and Class members or their insurance, and Defendant was provided with PII/PHI of Plaintiff and Class members. In exchange, Defendant impliedly agreed to,

among other things, take reasonable measures to protect the security and confidentiality of Plaintiff's and Class members' PII/PHI; and protect Plaintiff's and Class members PII/PHI in compliance with federal and state laws and regulations and industry standards.

158. The protection of PII/PHI was a material term of the implied contracts that were either between Plaintiff and Class members, on the one hand, and Defendant, on the other hand or were between third parties and Defendant to which Plaintiff and Class members were intended third party beneficiaries.

159. Plaintiff and Class members or the third parties fulfilled their obligations under the contracts.

160. Defendant breached its obligations by failing to implement and maintain reasonable data security measures to protect and secure the PII/PHI and in failing to implement and maintain security protocols and procedures to protect Plaintiff's and Class members' PII/PHI in a manner that complies with applicable laws, regulations, and industry standards.

161. Defendant's breach of its obligations of its implied contracts directly resulted in the Data Breach and the injuries that Plaintiff and all other Class members have suffered from the Data Breach.

162. Plaintiff and all other Class members were damaged by Defendant's breach of implied contracts because: (i) they paid—directly or through their insurers—for data security protection they did not receive; (ii) they face a substantially increased risk of identity theft and medical theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (iii) they suffered actual identity theft; (iv) their PII/PHI was improperly disclosed to unauthorized individuals; (v) the confidentiality of their PII/PHI has been breached; (vi) they were deprived of the value of their PII/PHI, for which there is a well-established national and international market; and/or (vii) they lost time and

money to mitigate and remediate the effects of the Data Breach, including the increased risks of medical identity theft they face and will continue to face.

163.    As a direct and proximate result of Defendant's wrongful conduct, Plaintiff and Class members have suffered and will continue to suffer other forms of injury, including but not limited to, anxiety, emotional distress, invasion of privacy, and other economic and non-economic losses.

164.    Plaintiff and Class members are entitled to damages incurred as a result of the Data Breach.

**COUNT V**
**UNJUST ENRICHMENT**
**(Plaintiff, on behalf of herself and the Nationwide Class, or in the alternative, the California Subclass)**

165.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

166.    This count is pleaded in the alternative to Plaintiff's breach of contract claims (Counts III and IV).

167.    Plaintiff and Class members conferred a monetary benefit upon Defendant in the form of their sensitive and private information.

168.    Defendant collected, maintained and stored that information to carry out its business.

169.    Defendant accepted or had knowledge of the benefits conferred upon it by Plaintiff and Class members by acquiring and/or collecting their private information. Defendant appreciated and benefitted from the receipt of Plaintiff's and Class members' private information in that it used the private information and profited from the healthcare transactions in furtherance of its business.

170.    Defendant acquired Plaintiff's and Class members' private information through inequitable means in that it failed to disclose the inadequate data security procedures previously alleged herein.

171.    Defendant should not be permitted to retain the PII/PHI belonging to Plaintiff and Class members because Defendant failed to adequately implement the data privacy and security procedures for itself at the expense of Plaintiff's and Class members' safety and that were otherwise mandated by federal, state, and local laws and industry standards.

172.    Defendant unjustly enriched itself by using the private information acquired from Plaintiff and Class members to further its business.

173.    Notably, Defendant chose not to use any payments to enhance their data security procedures.

174.    Had Plaintiff and Class members known of Defendant's inadequate security measures they would not have agreed to allow Defendant to collect and maintain their information.

175.    Under principles of equity and good conscience, Defendant should not be permitted to retain the money wrongfully obtained from Plaintiff and Class members.  Defendant should be compelled to provide for the benefit of Plaintiff and Class members all unlawful proceeds received by it as a result of the conduct and Data Breach alleged herein.

176.    As a direct and proximate result of Defendant's wrongful conduct, Plaintiff and Class members have suffered and will continue to suffer other forms of injury, including but not limited to, anxiety, emotional distress, invasion of privacy, and other economic and non-economic losses.

177.    Plaintiff and Class members are entitled to equitable relief as a result of the Data Breach.

**COUNT VI**
**INVASION OF PRIVACY**
**(Plaintiff, on behalf of herself and the Nationwide Class, or in the alternative, the California Subclass)**

178.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

179.    Defendant invaded Plaintiff's and Class members' right to privacy by allowing the unauthorized access to Plaintiff's and Class members' PII/PHI and by negligently maintaining the confidentiality of Plaintiff's and Class members PII/PHI, as set forth in this Complaint. Defendant further invaded Plaintiff's and Class members' privacy by permitting third parties to access, disclose and publish Plaintiff's and Class members' PII/PHI online.

180.    The intrusion was offensive and objectionable to Plaintiff, Class members, and to the reasonable person in that Plaintiff's and Class members' PII/PHI was disclosed without prior written authorization of Plaintiff and the Class.

181.    The intrusion was into a place or thing which was private and is entitled to be private, in that Plaintiff and the Class members provided and disclosed their PII/PHI to Defendant privately with an intention that their PII/PHI would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class members were reasonable to believe that such information would be kept private and would not be disclosed without their written authorization.

182.    As a direct and proximate result of Defendant's acts described throughout this Complaint, Plaintiff's and the Class members' PII/PHI was viewed, distributed, and used by persons without prior written authorization and Plaintiff and the Class members suffered damages as described herein.

183.    Defendant has committed oppression, fraud, or malice by permitting the unauthorized disclosure of Plaintiff's and the Class members' PII/PHI with a willful and conscious disregard of Plaintiff's and the Class members' right to privacy.

184.    Plaintiff and Class members have no adequate remedy at law for the injuries in that a judgment for the monetary damages will not end the invasion of privacy for Plaintiff and the Class, and Defendant may freely treat Plaintiff's and Class members' PII/PHI with sub-standard and insufficient protections without intervention by this Court.

185.    Unless and until enjoined, and restrained by order of this Court, Defendant's wrongful conduct will continue to cause Plaintiff and Class members great and irreparable injury

in that the PII/PHI maintained by Defendant can be viewed, printed, distributed, and used by unauthorized persons.

**COUNT VII**
**VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT ("CLRA")**
**Cal. Civ. Code §§ 1750, *et seq.***
**(Plaintiff, on behalf of herself and the California Subclass)**

186.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

187.    Plaintiff brings this claim on behalf of herself and the California Subclass.

188.    The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA") is a comprehensive statutory scheme that is to be liberally construed to protect consumers against unfair and deceptive business practices in connection with the conduct of businesses providing goods, property or services to consumers primarily for personal, family, or household use.

189.    Defendant is a "person" as defined by Civil Code §§ 1761(c) and has provided "services" as defined by Civil Code §§ 1761(b). Specifically, Defendant provides medical insurance software solutions, which involves the collection and storage of PII/PHI.

190.    Plaintiff and the California Subclass members are "consumers" as defined by Civil Code §1761(d) and were engaged in "transactions" with Defendant and Defendant's clients as defined in §1761(e).

191.    Defendant's acts and practices were intended to and did result in the sales of products and services to Plaintiffs and California Subclass members in violation of Cal. Civil Code § 1770, including:

   a.    Representing that goods or services have characteristics that they do not have;

b. Representing that goods or services are of a particular standard, quality, or grade when they were not;

c. Advertising goods or services with intent not to sell them as advertised;

d. Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not;

e. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and California Subclass members' PII/PHI, which was a direct and proximate cause of the Data Breach;

f. Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

g. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and California Subclass members' PII/PHI, including duties imposed by the CCPA, Cal Civ. Code § 1798.100, *et seq*., FTC Act, 15 U.S.C. § 45, and HIPPA, 45 C.F.R. Part 160 and Part 164, which was a direct and proximate cause of the Data Breach;

h. Misrepresenting that it would protect the privacy and confidentiality of Plaintiff's and California Subclass members' PII/PHI, including by implementing and maintaining reasonable security measures;

i. Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and California Subclass members' PII/PHI, including duties imposed by the

CCPA, Cal Civ. Code § 1798.100, *et seq*., the FTC Act, 15 U.S.C. § 45, and HIPPA, 45 C.F.R. Part 160 and Part 164;

j. Failing to timely and adequately notify the Plaintiff and California Subclass members of the Data Breach;

k. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and California Subclass members' PII/PHI; and

l. Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and California Subclass members' PII/PHI, including duties imposed by the CCPA, Cal Civ. Code § 1798.100, *et seq*., the FTC Act, 15 U.S.C. § 45, and HIPPA, 45 C.F.R. Part 160 and Part 164.

192.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' PII/PHI.

193.    Had Defendant disclosed to Plaintiff and Class Members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Defendant was trusted with the sensitive and valuable PII/PHI of thousands of consumers, including Plaintiff, the Class, and the California Subclass. Defendant accepted the responsibility of being a steward of this data while keeping the inadequate state of its security controls secret from the public. Accordingly, because Defendant held itself out as maintaining a secure database of sensitive customer data, Plaintiff, the Class, and California Subclass members acted reasonably in relying on

Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

194.    As a direct and proximate result of Defendant's violations of the CLRA, Plaintiff and California Subclass members have suffered injuries, including but not limited to: (i) a substantially increased risk of identity theft and medical theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) actual identity theft; (iii) improper disclosure of their PII/PHI; (iv) breach of the confidentiality of their PII/PHI; (v) deprivation of the value of their PII/PHI, for which there is a well-established national and international market; and/or (vi) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of medical identity theft they face and will continue to face.

195.    Plaintiff and the California Subclass seek injunctive relief enjoining the acts and practices described above. Plaintiff and the California Subclass further intend to seek compensatory and punitive damages.

196.    Pursuant to Cal. Civ. Code. § 1782(a), Plaintiff and the California Subclass will serve Defendant with notice of its alleged violations of the CLRA by certified mail return receipt requested. If, within thirty days after the date of such notification, Defendant fails to provide appropriate relief for its violations of the CLRA, Plaintiff will amend this Complaint to also seek monetary damages.

**COUNT VIII**
**VIOLATION OF THE CALIFORNIA CONSUMER PRIVACY ACT**
**Cal. Civ. Code §§ 1798.100 *et seq*.**
**(Plaintiff, on behalf of herself and the California Subclass)**

197.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

198.    Plaintiff brings this claim on behalf of herself and the California Subclass.

199.    Plaintiff and California Subclass Members are residents of California.

200.    Defendant is a business that collects consumers' personal information as defined by Cal. Civ. Code § 1798.140(e). Specifically, Defendant provides medical insurance software solutions, which involves the collection and storage of PII/PHI.

201.    Defendant violated § 1798.150 of the California Consumer Privacy Act by failing to prevent Plaintiff's and the California Subclass members' nonencrypted and nonredacted personal information from unauthorized access and exfiltration, theft, or disclosure as a result of Defendant's violations of its respective duties to implement and maintain reasonable security procedures and practices appropriate to the nature of the information.

202.    Defendant knew or should have known that its data security practices were inadequate to secure California Subclass members' PII/PHI and that its inadequate data security practices created the risk of a data breach.

203.    Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the PII/PHI that Defendant collected and stored.

204.    Cybercriminals accessed "nonencrypted and unredacted personal information" as covered by Cal. Civ. Code § 1798.81.5(A)(1)(d) in the Data Breach.

205.    Upon information and belief, Plaintiff's and California Subclass members' PII/PHI accessed by the cybercriminals in the Data Breach includes "nonencrypted and unredacted personal information" as covered by Cal. Civ. Code § 1798.81.5(A)(1)(d).

206.    Plaintiff seeks injunctive relief in the form of an order requiring Defendant to employ adequate security practices consistent with law and industry standards to protect the California Subclass members' PII/PHI, requiring Defendant to complete its investigation into the breach, and to issue an amended statement giving a detailed explanation that confirms, with reasonable certainty, what categories of data were stolen and accessed without the California Subclass members' authorization, along with more detailed explanation of how the data breach occurred.

207.    Plaintiff and the California Subclass seek injunctive relief enjoining the acts and practices described above. Plaintiff and the California Subclass further intend to seek compensatory and punitive damages.

208.    Pursuant to Cal. Civ. Code. § 1798.150(a), Plaintiff and the California Subclass will serve Defendant with notice of its alleged violations of the CCPA by certified mail return receipt requested. If, within thirty days after the date of such notification, Defendant fails to provide appropriate relief for its violations of the CCPA, Plaintiff will amend this Complaint to also seek monetary damages.

209.    As a direct and proximate result of Defendant's violations of the Cal. Civ. Code §1798.150, Plaintiff and California Subclass members suffered damages, as described above.

**COUNT IX**
**DECLARATORY JUDGMENT**
**(Plaintiff, on behalf of herself and the Nationwide Class)**

210.    Plaintiff restates and realleges the preceding paragraphs as if fully set forth here.

211.    As previously alleged, Plaintiff and Class were third party beneficiaries of contracts that required Defendant to provide adequate security for the PII/PHI it collected.

As previously alleged, Defendant owes duties of care to Plaintiff and Class members that require it to adequately secure customer data.

212.    Defendant still possesses customer data pertaining to Plaintiff and Class members.

213.    Defendant has made no announcement or notification that it has remedied the vulnerabilities in its computer data systems.

214.    Accordingly, Defendant has not satisfied its contractual obligations and legal duties to Plaintiff and Class members.  In fact, now that Defendant's lax approach towards data security has become public, the PII/PHI data in its possession is more vulnerable than previously.

215.    Actual harm has arisen in the wake of the Data Breach regarding Defendant's contractual obligations and duties of care to provide data security measures to Plaintiff and Class members.

216.    Plaintiff, therefore, seeks a declaration that (a) Defendant's existing data security measures do not comply with its contractual obligations and duties of care, and (b) in order to comply with its contractual obligations and duties of care, Defendant must implement and maintain reasonable security measures, including, but not limited to:

> a.  engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;
>
> b.  engaging third-party security auditors and internal personnel to run automated security monitoring;
>
> c.  auditing, testing, and training its security personnel regarding any new or modified procedures;

d.  segmenting customer data by, among other things, creating firewalls and access controls so that if one area of Defendant is compromised, hackers cannot gain access to other portions of Defendant systems;

e.  purging, deleting, and destroying in a reasonable secure manner customer data not necessary for its provisions of services;

f.  conducting regular database scanning and securing checks;

g.  routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

h.  educating its customers about the threats they face as a result of the loss of their PII/PHI to third parties, as well as the steps Defendant customers must take to protect themselves.

## PRAYER FOR RELIEF

Plaintiff, individually and on behalf of all other members of the Class, respectfully requests that the Court enter judgment in her favor and against Defendant as follows:

A.  Certifying the Class as requested herein, designating Plaintiff as Class representative, and appointing Plaintiff's counsel as Class Counsel under Federal Rule of Civil Procedure 23;

B.  Awarding Plaintiff and the Class appropriate monetary relief, including actual damages, statutory damages, punitive damages, restitution, and disgorgement;

C.  Awarding Plaintiff and the Class equitable, injunctive, and declaratory relief, as may be appropriate. Plaintiff, on behalf of herself and the Class, seeks appropriate injunctive relief designed to prevent Defendant from experiencing another data breach by adopting and implementing best data security practices to safeguard PII/PHI and to provide or extend credit monitoring services and similar services to protect against all types of identity theft and medical identity theft;

D.      Awarding Plaintiff and the Class pre-judgment and post-judgment interest to the maximum extent allowable;

E.      Awarding Plaintiff and the Class reasonable attorneys' fees, costs, and expenses, as allowable; and

F.      Awarding Plaintiff and the Class such other favorable relief as allowable under law.

**<u>JURY TRIAL DEMANDED</u>**

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

Dated: September 5, 2024

Respectfully submitted,

By: */s/ Katrina Carroll*
Katrina Carroll
katrina@lcllp.com
**LYNCH CARPENTER LLP**
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Telephone: (312) 750-1265

Steven A. Schwartz*
steveschwartz@chimicles.com
Beena M. McDonald*
bmm@chimicles.com
Alex M. Kashurba*
amk@chimicles.com
Marissa N. Pembroke*
mnp@chimicles.com
**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**
One Haverford Centre
361 Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500

**pro hac vice* to be submitted

*Counsel for Plaintiffs and the Proposed Class*